## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **REGINA SZYDLO,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | **3:16-cv-0127 (VLB)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant/** | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| **v.** | : | **January 12, 2017** |
| | : | |
| **ROMAN LANDSCAPING & FENCING,** | : | |
| **Third-Party Defendant.** | : | |

**MEMORANDUM OF DECISION DENYING UNTIED STATES OF AMERICA'S
MOTION TO DISMISS [Dkt. No. 28]; DENYING ROMAN LANDSCAPING &
FENCING'S MOTION TO DISMISS [Dkt. No. 27]**

Plaintiff Regina Szydlo ("Szydlo"), a resident of Norwich, Connecticut, brings negligence claims against the United States of America ("USA") under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), as well as against Roman Landscaping & Fencing ("Roman").  [Dkt. No. 31.] Defendant USA moved to dismiss Szydlo's claim against it [Dkt. No. 28] and Szydlo opposed the motion [Dkt. No. 37].  USA additionally filed a Reply [Dkt. No. 38] and Szydlo obtained leave from the Court [Dkt. No. 40] to file a Sur-Reply [Dkt. No. 42].

In addition, USA filed a Third-Party Complaint against Roman seeking indemnification and apportionment of any adverse judgment in the action against Szydlo.  [Dkt. No. 21.]  Roman moved to dismiss the Third-Party Complaint [Dkt. No. 27] and USA opposed the motion [Dkt. No. 32].

The Court discusses each Motion to Dismiss in turn.  For the reasons that follow, USA's Motion to Dismiss Is DENIED, and Roman's Motion to Dismiss the Third-Party Complaint is DENIED.

I.   USA's Motion to Dismiss Szydlo's Claims

a.   **Factual Background**

Szydlo filed a Motion to Amend the Complaint on July 18, 2016 [Dkt. No. 24], and filed an Amended Complaint on August 11, 2016, one day after USA and Roman Landscaping filed their Motions to Dismiss.  [Dkt. Nos. 27 (Roman's Motion), 28 (USA's Motion), 31 (Amended Complaint).]  In response, the Court issued an Order granting Plaintiff's Motion to Amend, and stating "The Court will consider the pending motions to dismiss in light of the Amended Complaint." [Dkt. No. 29.]

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court accepts as true "all material factual allegations in the complaint."  *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  Unlike a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court also has "the power and obligation" to consider "evidence outside the pleadings, such as affidavits," to resolve questions of fact and determine whether subject matter jurisdiction exists.  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *see also Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (stating Courts refer to evidence outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction).  Accordingly, the following facts

2

are taken from the material facts alleged in Szydlo's Amended Complaint and the exhibits to the parties' briefing regarding dismissal.

Throughout the relevant time period, USA had possession and control of certain property in Gales Ferry, Connecticut.  [Dkt. No. 31 (Amended Complaint) at 1-2.]  On that property was a post office open to the public (the "Post Office"), as well as adjacent sidewalks and parking areas.  *Id.* at 2.

Pursuant to a contract between USA and Roman, Roman "was responsible . . . for the winter maintenance of the sidewalks/walkways and parking areas adjacent to the post office, including the sidewalk/walkway that is the subject of this lawsuit."  *Id.* at 4.  The contract between USA and Roman states, in relevant part:

> The supplier will provide all necessary labor, equipment, materials, supplies and supervision to provide snow services as listed herein.
>
> If the accumulation of snow exceeds two (2) inches, the supplier shall commence the snow operation without further notification, in accordance with the schedule specified below.
>
> The supplier will plow/remove snow from the employee parking, the customer parking, the truck/loading dock, the sidewalks/steps/ramps, and the sidewalks abutting the property.   The entire area is an estimated 9,000 square footage.  The supplier will apply salt/sand only when requested by the USPS . . .

[Dkt. No. 37-2 at 17-18.]

Despite the express terms of the contract, Roman consistently removed snow and applied salt and sand without USA's request, even where less than two inches of snow had accumulated.  Charlene Perry ("Perry"), the Officer-in-Charge of the Post Office, explained that "during [my] four years as [Officer In Charge] of

the [Post Office], I did not direct, nor to my knowledge [did] anyone else on my staff direct, Roman as to how to complete the contract and remove snow and/or place ice and/or sand."  [Dkt. No. 28-2 at 4.]  Michelle Laflamme ("Laflamme"), a Post Office employee, confirmed that Roman plows and treats the Post Office grounds whenever it snows, without request from her.  [Dkt. No. 37-4 at 60-65.]

While Roman regularly treated the Post Office grounds, Roman did not warn Post Office patrons of dangerous snow and ice conditions, and had "no responsibility to place warning signs or cones to warn pedestrians of icy conditions."  [Dkt. No. 37-3 (Perry Deposition) at 70-71 ("[T]o your knowledge, did the USPS give any sort of responsibility to any other party, or Roman, regarding putting warning signs or any type of warnings for customers at the Gales Ferry post office?  A. No.")].

USA and Roman have not modified in writing the terms of their contract to reflect Roman's general practice of treating the Post Office grounds for winter weather conditions without request.  In fact, Perry had not reviewed the winter weather provision of the contract prior to February 4, 2014.  [Dkt. No. 37-3 (Perry Deposition) at 61 (". . . you had not reviewed the contract marked as Exhibit D before the February 4, 2014 incident?  A. Correct.").]  However, USA and Roman have since reviewed and modified in writing other terms of their contract.  [Dkt. No. 37-2 at 2, 4 (written modifications dated 10/1/14).]

It snowed five inches on February 3, 2014, but did not snow on February 4, the day Szydlo fell.  [Dkt. No. 28-4 at 2.]  A letter from a Consulting Meteorologist states:

**4**

> **The low of 19 degrees [on February 4, 2014] occurred during the predawn hours.  The high that afternoon was about 35 degrees.  At the time in question (approximately 9:40am on February 4, 2014), weather conditions in Gales Ferry included a clear sky, a temperature of 27 degrees, wind from the northeast at 8 miles per hour, and visibility of about 7.0 miles.  There was about 4.0" of snow present on untreated, undisturbed ground surfaces.  It is likely that there were also some icy spots present on untreated surfaces.   These would have begun forming the previous afternoon.**

[Dkt. No 28-5 at 2.]

Roman's itemized bill indicates Roman plowed the Post Office property once on February 4, 2014, administered sand once, and administered one "walk and ice" treatment."  [Dkt. No 28-4 at 2.]  The bill does not indicate what time Roman treated the Post Office sidewalk, but Perry's Affidavit indicates "Roman had finished applying the snow melt and plowing before the accident occurred." [Dkt. No. 28-2 at 5.]  Laflamme confirmed the Post Office grounds had already been plowed and treated with Ice Melt when she arrived at work around 8:30 am on February 4.  [Dkt. No. 37-4 at 60, 67.]

On the morning of February 4, 2014, Szydlo entered the Post Office as a customer, and at 9:40am she exited the Post Office, slipped, and fell on the adjacent sidewalk, which Szydlo alleges was covered in ice.  [Dkt. No. 31 at 2.] Plaintiff sustained injuries including:

> (a) Spiral fractural of the lateral malleolus of the right ankle;
> (b) Avulsion fracture of the medical malleolus of the right ankle;
> (c) Subluxation of the talus;
> (d) Comminuted fracture with bleeding;
> (e) Fear of the development of early onset traumatic arthritis;
> (f)  Permanent disability and pain; and,
> (g) Fungal infection in right foot.

5

*Id.* at 3.  Plaintiff required splinting and reduction of her dislocated joint by emergency room physicians, surgery and orthopedic care, including surgical placement of screws, fixation of the fibula fracture by a 6-hole plate, split therapy, physical therapy, and medication for swelling and pain.  *Id.* at 3.  Plaintiff also experienced, and fears she will permanently experience, "pain, discomfort, difficulty sleeping, anxiety and a loss of restriction of motion of her right ankle" as a result of the aforementioned injuries.  *Id.* at 3.  Plaintiff also sustained permanent "disfigurement and scarring" to her right ankle, which caused her "humiliation and embarrassment."  *Id.* at 4.

Laflamme observed one patch of ice on the sidewalk outside the Post Office after Szydlo fell (the exact time delay between Szydlo's fall and Laflamme's discovery of ice is not given).  [Dkt. No. 37-4 at 45-46.]  Laflamme clarified that she was unsure whether the "slippery spot" was where Szydlo fell.  *Id.* at 79.  However, Laflamme also testified that when she discovered Szydlo "on the ground," the "bottom of [Szydlo] was wet," although Laflamme testified she did not see "what she fell on."  *Id.* at 37-39.  After Szydlo left the Post Office in an ambulance, Laflamme applied additional Ice Melt to the Post Office property and set up a caution cone to alert others of hazardous conditions.  *Id.* at 69-70.

Plaintiff subsequently filed the instant action, alleging USA and Roman each negligently maintained the Post Office sidewalks on the day in question, and failed to warn Post Office patrons of hazardous conditions.  *Id.* at 2, 5.

      b.      **Legal Standard**

6

To establish subject matter jurisdiction in a suit against the USA or its agencies, Plaintiff must show that the USA waived its sovereign immunity. *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cr. 2003).  The parties agree that the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"), waives sovereign immunity and grants the district courts:

> jurisdiction of civil actions on claims against the United States, for money damages, . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable . . .

However, the FTCA contains an exception preserving sovereign immunity for claims of negligence by an independent contractor.  18 U.S.C. § 2671 ("As used in . . . section[] 1346(b) . . . of this title, the term 'Federal agency' . . . does not include any contractor with the United States.  'Employee of the government' includes . . . officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity"); *Roditis v. U.S.*, 122 F.3d 108, 111 (2d Cir. 1997) ("'Employee' under the FTCA, however, specifically excludes 'any contractor with the United States.  . . . Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors.").  The parties dispute whether the independent contractor exception applies in this case, and accordingly whether the Court has jurisdiction over Szydlo's claims against USA.

Where, as here, a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing, by a preponderance[1] of the evidence, that jurisdiction exists.  *Tandon v. Captain's Cove Marina*, 752 F.3d 239, 243 (2d Cir. 2014); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141-42 (2d Cir. 2001); *Elliot v. U.S.*, No. 3:06-cv-1607, 2007 WL 2022044, at *2 (D. Conn. July 6, 2007).  "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp.*, 140 F.3d at 131.  Rather, as stated above, the Court has "the power and obligation" to consider evidence outside the pleadings to resolve questions of fact in its jurisdictional analysis.  *APWU*, 343 F.3d at 627.

   c.   Analysis

USA, as the possessor of the Post Office and surrounding sidewalks and parking lot, "owes an invitee two separate duties: the duty to inspect and maintain the premises to render them reasonably safe, and the duty to warn of dangers that the invitee could not reasonably be expected to discover."  *Gargano v. Azpiri*, 110 Conn. App. 502, 510 (2008); *see also Morin v. Bell Court Condo. Ass'n, Inc.*, 223 Conn. 323, 327 (1992) (same); *In re Gen. Dynamics Asbestos Cases*, 602 F. Supp. 497, 499-500 (D. Conn. 1984) ("Claims against the United States under the FTCA are governed by state law").  The parties dispute whether USA delegated those duties to Roman sufficiently to preclude subject matter

---

[1] The Second Circuit defines a preponderance of the evidence as "to prove that the fact is more likely true than not true."  *Henry v. Dep't of Transp.*, 69 F. App'x 478, 480 (2d Cir. 2003).

jurisdiction over USA for Szydlo's claims.  USA argues it delegated all duties to inspect and maintain the premises to Roman through an unwritten contract modification, and argues it delegated the duty to warn invitees of hazardous conditions as encompassed within the duty to maintain the property.  The Court discusses the two arguments in turn.

### i.    Unwritten Modification of Duty to Maintain

USA argues it delegated all of its duties as possessor of the Post Office sidewalk to Roman, an independent contractor, on February 4, 2014, bringing this action within the ambit of the FTCA exception for independent contractors.

According to the contract between USA and Roman, USA delegates "snow operation" to Roman if snow accumulation exceeds two inches, and delegates "plow/snow removal" and "sand/salt" application in all other situations "only when requested by the USPS."  [Dkt. No. 37-2 at 17-18.]  The contract terms do not otherwise delegate USA's duty to "inspect and maintain the premises," or USA's duty to warn invitees of dangerous conditions.[2]  *Id.*; *Gargano*, 110 Conn. App. at 510.

---

[2] Szydlo asserts in its Sur-Reply that Roman's actions may not be used to interpret the actual terms of the contract, which clearly indicate USA retained a duty to request winter weather services from Roman.  [Dkt. No. 42 at 3-4.]  Szydlo reasons that where a contract's terms are clear, courts do not look to the parties' actions to interpret them.  *Id.* at 3-4.  The Court does not interpret USA's briefing as arguing the contract's terms are ambiguous and should be interpreted in light of Roman's actions.  Rather, USA admits the written contract terms "originally contemplated the Postal Service calling Roman to inform him when it would like sand, salt, or ice melt," but asserts "there was a *modification* of the contract whereby Roman would apply sand, salt, or ice melt when he deemed necessary." [Dkt. No. 38 at 2 (emphasis added).]  To the extent USA may have argued the written contract terms should be interpreted in light of Roman's actions, the

It snowed five inches on February 3, 2014, but did not snow on February 4, the day Szydlo fell.  [Dkt. No. 28-4 at 2.]  Accordingly, the contract terms indicate USA retained the duty to sand and salt the Post Office sidewalks if USA did not request that Roman do so.[3]  [Dkt. No. 37-2 at 17-18.]

However, USA asserts that, while its contract with Roman did not delegate the duty to inspect and monitor the Post Office grounds unless it snowed two inches or more, Roman consistently plowed and removed snow and applied sand and salt without request from USA.  [Dkt. No. 28-2 at 4 (describing Roman's routine winter weather services, provided without USA request).]  In fact, USA asserts Roman applied "snow melt" and plowed before the accident occurred on February 4, 2014.  [Dkt. No. 28-2 at 5 (Perry Affidavit); Dkt. No. 37-4 at 60, 67 (Laflamme Deposition).]  USA argues this pattern of behavior constitutes a modification of the contract, establishing a modified agreement whereby Roman had the duty to plow and apply sand and salt whenever necessary, even when accumulation was under two inches.

---

Court agrees with Szydlo that such an interpretation is inappropriate, as the contract terms in question are clear.  *HLO Land Ownership Assocs. Ltd. P'ship v. Hartford*, 248 Conn. 350, 359-69 (1999) (stating when a contract is clear and unambiguous, evidence outside the contract is inadmissible to interpret contract terms); *Alstom Power, Inc. v. Balcke-Durr, Inc.*, 269 Conn. 599, 607 (2004) (same); *Leonard Concrete Pipe Co. v. C.W. Blakeslee & Sons, Inc.*, 178 Conn. 594, 598-99 (1979) (stating where a contract is clear and unambiguous, it "is to be given effect according to its terms").

[3] The Second Circuit has indicated that prior snowfall does not trigger an independent contractor's duty to plow the following day where the contract conveys a duty to plow only when a certain amount of snow has accumulated that day.  *Haskin v. U.S.*, 569 F. App'x 12, 15-16 (2d Cir. 2014) (summary order).

Szydlo disputes USA's modification argument.  Szydlo asserts a modification requires both parties to intend the modification, and argues USA could not have intended to modify the contract's winter weather provisions, because Perry admitted in her deposition she was unaware that contract term existed before February 4, 2014.  [Dkt. No. 37-3 at 61.]  Szydlo reasons that a party cannot intend to modify a contract term of which it is unaware.

In addition, Szydlo notes that other terms of the contract were later modified in writing, but the parties did not choose to modify the terms relating to Roman's winter weather duties at that time.  [Dkt. No. 37-2 at 2, 4 (showing written modifications of other contract terms).]  Szydlo argues if the parties had intended to modify that contract term, they would have done so in the way they have modified other terms.[4]

---

[4] Szydlo also argues Perry's statements are inadmissible hearsay and may not be used to establish Roman's routine actions, as Perry admitted in her deposition she did not personally see Roman provide the contemplated winter weather services on February 3 or 4, 2014.  [Dkt. No. 37-3 at 76-87 (stating Perry was not present at the Post Office on February 3 or 4, 2014.]  Szydlo correctly notes that statements not based on personal knowledge are inadmissible.  *U.S. v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985); *State v. Sunrise Herbal Remedies, Inc*., 296 Conn. 556, 573 (D. Conn. 2010).  However, Perry's general statement that "Roman almost always came to handle snow removal" is based on personal knowledge.  Perry stated in her affidavit that during her four years as the Officer-in-Charge, she was regularly at the Post Office.  [Dkt. No. 28-2 at 4 ("The majority of the time Roman handled snow, salt, and sand before the Gales Ferry, CT Post Office opened and before I, or my staff, arrived at work.").]  The statement that Roman plowed the parking lot and treated the sidewalks of the Post Office before *she* arrived at work is not a statement based on hearsay, as Szydlo suggests.  Such a statement is based on Perry's own "rational perception" of the plowed parking lot and treated sidewalk upon her arrival at the Post Office, and is admissible.  Fed. R. Evid. 701(a); *see also Brady v. Chem. Const. Corp.*. 740 F.2d 195, 201 (2d Cir. 1984) ("a lay witness may testify about his conclusions if they are based upon his perceptions").

"Courts do not rewrite contracts for the parties," but will instead bind parties to express terms of their contract absent countervailing policy considerations.  *Herbert S. Newman & Partners, P.C. v. CFC Const. Ltd. P'ship*, 236 Conn. 750, 760 (1996).  However, parties may modify contract terms through "mutual assent to the meaning and conditions of the modification."  *Id.* at 762.

The Court may infer modification "from the attendant circumstances and conduct of the parties," if there is evidence the parties "assent to the same thing in the same sense."  *Id.* at 762.  The mere "appearance of assent" is insufficient.  *Hope Acad. of Milford, Inc. v. Fortier*, No. CV03081072S, 2004 WL 944480, at *4 (Conn. Super. Ct. Apr. 13, 2004).  Rather, both parties must "know[] or ha[ve] reason to know that the other party may infer from his conduct that he assents" to the modification.  *Id.* at *4 (quoting 2 Restatement (Second), Contracts, Conduct as Manifestation of Assent § 19, p. 55 (1981)).

The form of the parties' other modifications may inform the Court whether the parties intended the instant modification; where prior modifications were in writing, parties are less likely to intend a later alleged oral modification.  *Schimelman v. Katz*, No. CV98063630S, 2003 WL 21659690, *3 (Conn. Super. Ct. June 19, 2003) (noting parties' prior modifications in writing in support of conclusion that parties did not intend separate oral modification).

Szydlo has offered evidence that Perry, the Officer-in-Charge of the Post Office, was unaware of any contract terms governing Roman's winter weather

duties at the time of Szydlo's fall.  In addition, Szydlo has shown that when USA and Roman chose to modify other contract terms, they did so in writing.  This evidence establishes that it is more likely than not that USA lacked the requisite knowledge and intent to legally modify the contract's winter weather provision prior to February 4, 2014.  [Dkt. No. 37-3 (Perry Deposition) at 61 (". . . you had not reviewed the contract marked as Exhibit D before the February 4, 2014 incident? A. Correct."); Dkt. No. 37-2 (Contract) at 3-13 (written contract modifications)].

Since Szydlo has established USA did not delegate the duty to inspect and monitor the Post Office, the Court turns to whether USA in fact breached that duty on February 4, 2014 by failing to provide a "reasonably safe" premises for invitees.  *Gargano v. Azpiri*, 110 Conn. App. 502, 510 (2008); *see also Morin v. Bell Court Condo. Ass'n, Inc.*, 223 Conn. 323, 327 (1992).

Laflamme stated she observed some ice on the sidewalk outside the Post Office soon after Szydlo fell, and that she noticed the portion of Szydlo touching the ground where she fell was "wet."  [Dkt. No. 37-4 at 45-46.]  In addition, it was 27 degrees at the date and time in question, and had snowed over five inches the day before.  [Dkt. No. 28-5 at 2.]  These facts are sufficient to establish that there was at least some ice on the Post Office sidewalk on the morning of February 4, 2014.  The Second Circuit has found analogous facts sufficient that "a reasonable jury could conclude . . . that [plaintiff] was injured by the negligence of USPS employees—specifically, their failure to detect and remove ice on the sidewalks surrounding the Branch, or their failure to summon [the independent contractor] to remove the ice."  *Haskin v. U.S.*, 569 F. App'x 12, 15-16 (2d Cir. 2014) (summary

**13**

order) (finding subject matter jurisdiction where invitee slipped on ice outside post office, where less than two inches of snow fell that day but it snowed significantly the day before).  The fact that Roman plowed and treated the sidewalks after the February 3, 2014 snowfall does not require a different conclusion.  *Id.* at 14 (noting the independent contractor plowed and applied sand and salt four times between the prior day's snowfall and the day plaintiff fell).

Despite the icy conditions on February 4, USA would not have had a duty to maintain the premises at the time of Szydlo's fall if the weather at that time presented an ongoing hazardous condition.  Connecticut recognizes an exception to premises liability when the dangerous condition is ongoing, such as when ice is in the process of thawing and re-freezing due to fluctuating temperatures.  *Riccio v. Harbour Village Condo. Ass'n, Inc.*, 281 Conn. 160, 165 (2007) (stating premises liability exists where snow has melted and re-frozen, and the re-frozen ice has "existed for such a length of time that the defendants should, in the exercise of reasonable care, have discovered it in time to remedy it"); *see also Kraus v. Newton*, 211 Conn. 191, 197 (1989) (stating the possessor of a premises "may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps").

However, the meteorological report provided indicates there was no precipitation on February 4, 2014, and states the temperature remained below freezing from the predawn hours to the afternoon.  [Dkt. No. 28-5 at 2.]  At the time of Szydlo's fall, the temperature was 27 degrees.  *Id.*  Accordingly, the Court has insufficient evidence to conclude there was an ongoing weather condition

**14**

exempting USA from a duty to maintain the premises.  Rather, the weather report provided indicates any ice present on the sidewalk at 9:40am was present before the Post Office opened, and could have been discovered through reasonable diligence by Ms. Laflamme when she entered the building that morning.  *See Kraus*, 211 Conn. at 196-97 (citing *Sheehan v. Sette*, 130 Conn. 295 (1943) (finding premises owner liable for plaintiff's injury where "the jury could reasonably have found that the steps had been slippery for almost five hours")).

Accordingly, the evidence establishes that USA owed a duty to monitor the Post Office sidewalks and keep them clear of ice on the date and time in question. Szydlo has also sufficiently established at this stage that USA did not modify its contract with Roman to delegate the duty to inspect and maintain the premises. USA's Motion to Dismiss Szydlo's Claims arising from the failure to inspect and maintain the Post Office premises is accordingly DENIED.

### ii.   The Duty to Warn

In addition, USA argues it delegated the duty to warn invitees of hazardous conditions along with the duty to maintain the premises.  [Dkt. No. 42 at 4.]  While the contract terms do not explicitly state Roman shall warn Post Office patrons of hazardous conditions, USA argues "the duty to warn of dangerous conditions is inherently encompassed within the general transfer of the responsibility to maintain the building and ensure the safety of its inhabitants."  *Id*.  In support of its position, USA cites *Basher v. U.S.*, No. 5:92-cv-186, 1995 WL 646343, *1-3 (D. Conn. Mar. 14, 1995), which determined the federal government had delegated duties to maintain the courthouse premises and warn of unsafe conditions to an

**15**

independent contractor.  The *Basher* court found delegation of both duties was "the only reasonable construction of the contract between [the independent contractor] and the United States."  *Id.* at *3.

Szydlo responds that the duties to inspect and maintain the premises and to warn invitees of dangers on the property are two separate duties, and the distinct duty to warn is not "encompassed" in a delegation of the duty to maintain and inspect the premises.  [Dkt. No. 42 at 6 (citing *Gargano*, 110 Conn. App. at 510 ("A possessor of land owes an invitee two separate duties: the duty to inspect and maintain the premises . . . , and the duty to warn.").]

The Court agrees with Szydlo that the duties to maintain a premises and to warn invitees of hazardous conditions therein are distinct.  *See generally Morin v. Bell Ct. Condo. Ass'n Inc.*, 223 Conn. 323, 327 (1992) ("A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe.  In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover.") (internal citations omitted).  Courts routinely analyze the two duties distinctly.  *See, e.g., Popow v. Stratford*, 3:07-cv-1620, 2010 WL 537752, *9 (D. Conn. Feb. 12, 2010) (stating a possessor of land has separate duties to inspect and maintain the premises and to warn invitees of dangers therein, and analyzing duty to warn separate from duty to maintain); *Gargano*, 110 Conn. App. at 510-11 (finding the property owner had no duty to warn the invitee in question of a known hazard, but did owe a duty to maintain the premises in a reasonably safe condition).

**16**

The Court also notes that Connecticut law enforces contract terms according to their plain language, and does not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *HLO Land Ownership Assocs. Ltd. P'ship v. Hartford*, 248 Conn. 350, 357 (1999). Accordingly, where USA has clearly delegated some of its duties to maintain and inspect the Post Office, the Court will not read into that delegation an intent to delegate the separate duty to warn. *See generally Leonard Concrete Pipe Co.*, 178 Conn. at 598-99 ("Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms."); *see also, e.g., Bodner v. U.S. Auto Ass'n*, 222 Conn. 480, 488 n.4 (1992) (stating, in *dicta*, a duty voluntarily taken via contract is enforceable).

USA's citation to *Basher* is inapposite.  In *Basher*, the court found delegation of the duties to maintain the courthouse premises and warn invitees of dangerous conditions was the "only reasonable construction of the contract" where the contract terms were significantly broader than the contract terms at issue here.  In *Basher*, the contract stated the independent contractor had "the overall responsibility for the administration of this contract.  He alone, without delegation, is authorized to take actions on behalf of the Government to amend, modify, or deviate from the contract terms," and is responsible for "inspecting the work to ensure compliance with the contract requirements."  1995 WL 646343, at *1.  The court in *Basher* found the United States had delegated the duty to warn not because it had delegated the duty to perform some maintenance, but because it had broadly delegated "overall responsibility" for maintaining the premises.  *Id*.

17

In contrast, USA's contract with Roman delegates specific duties to plow and apply sand and salt only under certain conditions.  As discussed *supra*, the duties to maintain the Post Office grounds delegated in USA's contract with Roman are narrow enough that they do not even encompass the duty to inspect and maintain the premises in all circumstances, let alone the separate duty to warn invitees of hazardous conditions.

Nor has the duty to warn been separately delegated to Roman through unwritten modification.  Roman does not regularly warn Post Office patrons of dangerous snow and ice conditions.  [Dkt. No. 37-3 (Perry Deposition) at 70-71 ("[T]o your knowledge, did the USPS give any sort of responsibility to any other party, or Roman, regarding putting warning signs or any type of warnings for customers at the Gales Ferry post office?  A. No. . . . Q. So you would agree with me that Roman had no responsibility to place warning signs or cones to warn pedestrians of icy conditions?  A. Correct.")].

Plaintiff has met its burden to establish USA retained a duty to warn patrons of hazardous conditions on the Post Office grounds.  Plaintiff has also established at this juncture that USA breached that duty on February 4, 2014, as Laflamme observed at least one "slippery spot" soon after Szydlo fell, and did not place warning signs around the property when she opened the Post Office that morning.  [Dkt. No. 37-4 at 77-79 (stating Laflamme observed a "slippery spot"); *Id.* at 70 (stating Laflamme put a caution cone outside the Post Office after Szydlo fell).]  Accordingly, USA's Motion to Dismiss Szydlo's claim arising from the failure to warn is DENIED.

**18**

## II. USA's Claims Against Roman

### a.    Factual Background

In addition to Plaintiff's claims against USA and Roman, USA filed a third-party action against Roman seeking indemnification and apportionment.  The brief statement of facts alleges Szydlo slipped and fell outside the Post Office on February 4, 2014.  [Dkt. No. 21 at 2.]  On the day of the alleged fall, Roman was "solely responsible for removing snow and/or ice and applying sand and salt" at the Post Office, pursuant to a contract between Roman and USA.[5]  *Id.* at 3.

### b.    Legal Standard

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff" when deciding a motion to dismiss.  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).

---

[5] **USA further explains the timeliness of the Third-Party Complaint, stating Szydlo filed her Complaint against USA on February 16, 2016, and USA filed its Answer on March 29, 2016.  Id. at 2.  The parties agreed they should be allowed to add additional parties to the litigation until June 3, 2016, which the Court approved, and USA filed its Third-Party Complaint against Roman on June 2.  Id. at 2-3.**

c.      Analysis

Roman moves to dismiss count two of USA's Third-Party Complaint, which seeks apportionment of any judgment against USA.  [Dkt. No. 27-1].  Count two states: "Should Szydlo prove at trial that her alleged injuries and damages were caused by negligence, and that the United States of America is found liable to Szydlo for her injuries, the United States of America is entitled to apportionment of liability from Roman under Connecticut General Statutes § 52-102b."  [Dkt. No. 21 at 6.]

Connecticut's apportionment statute states:

In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the damages.

Conn. Gen. Stat. § 52-572h(c).[6]

However, Roman notes that Connecticut's apportionment statute "does not apply . . . when the two defendants are a servant and his master who is vicariously liable for his servant's tortious conduct."  *Gazo v. Stamford*, 255 Conn. 245, 255 (2001)).  Roman argues USA and Roman fall into the vicarious liability exception.

---

[6] Conn. Gen. Stat. § 52-102b, which USA cites as the statutory basis for its apportionment claim, creates a cause of action for a party to seek apportionment under Section 52-572h.  Section 52-572h, quoted above, substantively describes when apportionment is appropriate.

Roman asserts property owners, including USA, retain a non-delegable duty "to exercise ordinary care for the safety of [invitees]" as the "owner or occupier of [the] premises." *Smith v. Greenwich*, 278 Conn. 428, 458 (2006). Because the duties to maintain the Post Office premises and to warn patrons of dangerous conditions are "non-delegable," Roman asserts USA retained vicarious liability for any negligence by Roman in fulfilling those duties, and may not seek apportionment of any adverse judgment.  [Dkt. No. 27-1 at 3 (citing *Flanagan v. Greystone Park Condo.*, CV020459590S, 2002 WL 31875349, at **2-3 (Super. Ct. Conn. Dec. 2, 2002) ("The non-delegable duty doctrine, which places a duty on the landowner or possessor to keep the premises in a reasonably safe condition, involves a form of vicarious liability . . . in direct contrast to separate and distinct acts of negligence contemplated under General Statutes § 52-572h, and thus, vicarious liability and apportionment are, therefore, necessarily inconsistent.")].

USA responds that the FTCA states the federal government is not liable for the negligence of its independent contractors.  [Dkt. No. 32.]  USA asserts the FTCA's exemption from liability for independent contractors' negligence places USA's claims against Roman in a different category from other premises liability actions, and accordingly the "Court does not need to address the Connecticut state law cases."  *Id.* at 1.

As the Court discussed at length above, whether USA delegated all relevant duties to Roman is in dispute.  However, taking USA's Third Party Complaint in the light most favorable to USA, as the Court is constrained to do

when evaluating a motion to dismiss, USA has alleged that "Roman, pursuant to the contract [with USA], was solely responsible for removing snow and/or ice and applying sand and salt at the Gales Ferry Post Office" on the day of Szydlo's alleged fall. [Dkt. No. 21 at 3.]

Accordingly, the question for the Court at this stage is whether the FTCA does in fact circumvent Connecticut's non-delegable duty doctrine, as USA asserts. The Supreme Court has addressed the issue:

> Congress . . . could have left the determination as to whose negligence the Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor.

*Logue v. U.S.*, 412 U.S. 521, 528 (1973).

Accordingly, while "[c]laims against the United States under the FTCA are governed by state law," (*In re Gen. Dynamics Asbestos Cases*, 602 F. Supp. 497, 500 (D. Conn. 1984)), "any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors." *Roditis*, 122 F.3d at 111 (collecting cases); *see also Berkman v. U.S.*, 957 F.2d 108, 112-13 (4th Cir. 1992) ("[T]he FTCA exception for independent contractors preempts state law nondelegable duties.").

Beyond honoring Congressional intent, the Second Circuit has also noted state non-delegable duties may not override the FTCA because it "would result, in cases such as this, in a form of strict liability against the United States for injuries caused by its independent contractors." *Roditis*, 122 F.3d at 111. This would

**22**

contravene the FTCA, which "precludes government liability absent a negligent act, and, thus, does not extend to liability without fault." *Id.* at 112 (quoting *Dalehite v. U.S.*, 346 U.S. 15, 44 (1953)).

Accordingly, assuming at the motion to dismiss stage that USA's allegations against Roman are true, and USA delegated all relevant duties to Roman on February 4, 2014, Connecticut's non-delegable duty doctrine does not preclude USA's apportionment claim.  Roman's Motion to Dismiss is accordingly DENIED.

### III. Conclusion

For the foregoing reasons, USA's Motion to Dismiss is DENIED.  Roman's Motion to Dismiss is DENIED.  This action will proceed on all claims asserted in Szydlo's Amended Complaint and USA's Third Party Complaint.

IT IS SO ORDERED

_____/s/_____

Vanessa L. Bryant,
United States District Judge

This 12th day of January, 2017

23